UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **FINANCIAL FEDERAL CREDIT INC.** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-04-4293 |
| § | |
| **DUANE P. SMITH,** § | |
| **DSS MANAGEMENT COMPANY, L.L.C.** § | |
| **and D. SMITH & SONS, L.L.C.** § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff Financial Federal Credit, Inc.'s ("FFC") Motion for Summary Judgment (Dkt. #11). After consideration of the motion, the parties' arguments, and the applicable law, the Court is of the opinion that the motion should be GRANTED in part and DENIED in part.

**Factual and Procedural Background**

On or about February 18, 2002, FFC provided certain financing to Conmaco/Rector, L.P. ("Conmaco") for the acquisition and/or purchase of certain equipment. In return, Conmaco executed and delivered to FFC a Promissory Note in the original amount of $543, 624.25 (the "Note"). The Note was to be paid in sixty (60) monthly installments as follows: fifty-nine (59) installments in the amount of $9,061.00 each, followed by one (1) installment in the amount of $9,025.25, commencing on March 18, 2002, and continuing on the same day of each month thereafter until paid in full. The Note was secured by a Security Agreement executed simultaneously therewith wherein Conmaco granted FCC a security interest in certain equipment, assets, and other interests of Conmaco, including a Link Belt 200 Ton Truck Crane (the "Crane"). The Note and the Security Agreement also provide for acceleration of all indebtedness due under the terms of the Note in the event of Conmaco's default.

Conmaco is a limited partnership comprised of Defendants DSS Management Company,

L.L.C., as the original General Partner, and D. Smith & Sons, L.L.C., as the original Limited Partner. Defendant Duane Smith is the Manager of DSS Management Company, L.L.C. and a Member and Trustee of D. Smith & Sons, L.L.C.  As part of the consideration for the Note, Defendants, Duane P. Smith, DSS Management Company, L.L.C., and D. Smith & Sons, L.L.C. (collectively "Defendants") executed separate guaranty agreements for the obligations of Conmaco.  The guaranty obligations provide that Defendants agree to be directly and unconditionally liable to FCC, without reduction by reason of any defense, setoff, or counterclaim, for the due payment and performance of all obligations of Conmaco to FCC.  The agreements further provide that all notices to which Defendants may be entitled, including but not limited to demand, notice of intent to accelerate, and notice of acceleration, are expressly waived by the terms of the guaranties.

Conmaco filed for bankruptcy under Chapter 11 on February 27, 2004 in the United States Bankruptcy Court for the Eastern District of Louisiana.  FFC filed a proof of claim in the bankruptcy action on March 15, 2004 in the amount of $326,619.49, which represented the balance owed under the Note at that time.  The last payment made by Conmaco on the Note was received on August 23, 2004, bringing the balance under the Note to $326,160.25.  FFC subsequently obtained relief from the automatic stay in order to repossess and conduct a foreclosure sale of the Crane.  The Crane was sold on February 1, 2005 for $150,000, which brought FFC's claim to $176,619.49.  Conmaco filed an objection to the proof of claim filed by FCC in the bankruptcy action arguing that the foreclosure sale was not conducted in a commercially reasonable manner.  In May of 2005, FCC and Conmaco entered into a settlement regarding the remaining amount owed under the Note, which was ultimately approved by the bankruptcy court on June 29, 2005.

FFC filed its Motion for Summary Judgment on December 15, 2004, to which Defendants responded on March 17, 2005.  Thereafter, FFC filed its Supplemental Argument in Support of Its Motion for Summary Judgment on August 5, 2005.

**Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id*.

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173,

176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Discussion

In its motion, FFC asserts that there are no genuine issues of material facts as to Defendants' liability under the guaranty agreements. Therefore, FFC seeks a judgment for the remaining amount due under the Note, as well as pre-judgment interest at the contractual rate, attorneys' fees, contingent post-judgment costs and attorneys' fees, post-judgment interest, and costs of court. In opposition, Defendants offer several arguments in support of their position that summary judgment is not proper. First, Defendants appear to assert that FFC did not properly accelerate the maturity of the indebtedness under the Note. Second, Defendants attack the amount of damages that FFC seeks under the Note, arguing that FFC has not properly applied all payments and other lawful offsets against the amount owed or properly calculated the amount of interest due. Third, Defendants maintain that the foreclosure sale of the Crane was not conducted in a commercially reasonable manner. Finally, Defendants dispute the reasonableness of the attorneys' fees sought by FFC. The Court will address each of these issues below.

**I.     Acceleration**

Defendants first contend that FFC has not introduced summary judgment evidence proving that it properly accelerated the maturity of the indebtedness under the Note. Specifically, Defendants

maintain that the acceleration provision is optional, and that Texas law provides that optional acceleration provisions require notice of intent to accelerate and notice of acceleration before acceleration actually occurs. According to Defendants, FFC did not comply with this two-step acceleration process. In its reply, FFC contends that Defendants have waived the notice requirements because the Note and each of the guaranty agreements contain the specific wording necessary to effectuate waivers of the notice requirements in non-residential, non-consumer transactions. The Court agrees.

In support of their position that FFC failed to properly accelerate, Defendants rely on *Ogden v. Gibraltar Savings Ass'n*, 640 S.W.2d 232 (Tex. 1982). Defendants' reliance on *Ogden*, however, is misplaced because the Texas Supreme Court in *Ogden* specifically acknowledges that the notice requirements only apply in the absence of an effective waiver. *Id*. at 233. Under Texas law, a waiver of the notice requirements is effective if and only if its clear and unequivocal, which requires that the waiver provision must state specifically and separately the rights surrendered. *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991). For example, a waiver of "notice" or "notice of acceleration" has been recognized as effective to waive notice of acceleration. *Id*. (listing other examples of effective waiver language recognized by various Texas courts).

In this case, it is undisputed that each guaranty agreement explicitly states that the guarantor "waives any and all notices . . . including notices of intent to accelerate and of acceleration . . . ." Dkt. #11, Ex. C-E. Moreover, as Defendants recognize in their response, the Note itself provides that FFC "may, at its option, without notice or demand, accelerate the maturity of the indebtedness outstanding under the Note . . . ." Dkt. #21, p. 3. In light of this clear and unequivocal language, the Court finds that the guaranty agreements and the Note contain effective waiver provisions, such that Defendants were not entitled to the notices about which they now complain.

## II.     FFC's Calculations of Damages

Although Defendants next contest FFC's calculation of damages, the Court notes that these

5

issues have largely already been resolved. In particular, Defendants' first assert that "since there has not been proper acceleration, the amount on which interest is to be calculated is only the past due installment amounts, not the entire unpaid indebtedness." As the Court has explained, however, Defendants' assertions regarding improper acceleration are unfounded—a conclusion that renders Defendants' first contention about miscalculated interest moot. Defendants next attack the actual amount of interest per diem sought by FFC, arguing that FFC is uncertain about the dates from which interest began to accrue and further that FFC miscalculated the per diem amount by more than two dollars. In addition to their attack of the interest calculation, Defendants maintain that FFC has not properly applied the net proceeds from the foreclosure sale against the amount allegedly owed. As discussed below, FFC's reply to Defendants' response resolves these problems.

In its reply, FFC explains that the proceeds from the foreclosure sale of the Crane had not been applied to the outstanding balance under the Note because the Crane had not been sold at the time the summary judgment motion was filed. Indeed, the evidence indicates that FFC's motion was filed on December 15, 2004, and that the foreclosure sale did not occur until February 1, 2005. Consequently, FFC filed a reply on March 31, 2005, which not only explains all of the calculations along with corresponding dates and contractual provisions, but also includes a spread sheet illustrating the appropriate payments and credits considered in arriving at the revised amount owed. The Court notes specifically that the revised calculation takes into account the net proceeds of the foreclosure sale of the Crane and also that FFC has used amounts consistent with those used by Defendant in their response. To date, Defendants have not challenged FFC's revised conclusion. The Court finds FFC's revised damage amounts to be correct, and that no fact issues exist as to the amounts presently owed by Defendants under the Note by virtue of the guaranty agreements.

### III. The Foreclosure Sale

Defendants next allege that fact issues exist regarding whether the foreclosure sale of the Crane was commercially reasonable. Defendants attack the foreclosure sale on two fronts: first, that FFC

did not afford sufficient notice of the sale to third-party bidders, which resulted in an unreasonably low sale price at, what was effectively, a private sale; and second, that FFC, as the secured party, impermissibly purchased the Crane itself in violation of the statute governing such dispositions. FFC counters that the sale was public, appropriately advertised, and commercially reasonable in all other respects. In the Supplemental Argument of FFC in Support of Its Motion for Summary Judgment filed August 5, 2005, FFC also contends Defendants are barred by the doctrine of res judicata from asserting this defense due to developments in Conmaco's bankruptcy proceeding. The Court agrees and finds that res judicata bars this defense.

A bankruptcy judgment will operate as res judicata in a subsequent lawsuit if: 1) both cases involve the same parties; 2) the prior final judgment on the merits was rendered by a court of competent jurisdiction; and 3) the same cause of action is at issue in both cases. As to the first element, the Fifth Circuit has explained that res judicata flowing from bankruptcy judgments applies not only to actual parties of a bankruptcy proceeding, but also their privies. *See Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 869-70 (5th Cir. 1984). For example, in *Southpark Properties*, the Fifth Circuit determined that res judicata applied to an individual who, although not an actual party to the prior bankruptcy, had a "strong and direct pecuniary interest in the outcome of the [bankruptcy] proceedings." *Id*. at 870. In describing the pecuniary interest, the court noted that the individual was a major stockholder of the party corporation, its president, and a guarantor of one of the corporate loans. *Id*.

In the case at bar, the Court has little difficulty concluding that Defendants are in privity with Conmaco. As noted above, Conmaco is a limited partnership comprised of Defendant DDS Management Company, L.L.C., as the original General Partner, and Defendant D. Smith & Sons, L.L.C., as the original Limited Partner. Furthermore, Defendant Duane Smith is the Manager of DSS Management Company, L.L.C. and a Member and Trustee of D. Smith & Sons, L.L.C. Moreover, as with the individual in *Southmark Properties*, each of the Defendants in this case also constitute guarantors of the Conmaco Note. As such, the Court finds that the first element is satisfied for a

finding of res judicata.

The other elements necessary for applying res judicata are also satisfied in this case. The bankruptcy court had jurisdiction over the prior matter as Conmaco's cross-claim against FFC and its objection to FFC's proof of claim, both of which attacked the commercial reasonableness of the foreclosure sale, arose directly in the context of core bankruptcy proceedings. *See In re Baudoin*, 981 F.2d 736, 743 (5th Cir. 1993) ("A response to a proof of claim which is, in essence, a counterclaim, is a core proceeding under 28 U.S.C. § 157(b)(2)(C)"). Additionally, the requirement of a final judgment on the merits is satisfied by bankruptcy court's June 29, 2005 order approving the settlement between Conmaco and FFC.[1] *See Hatchett v. U.S.*, 1997 WL 397730, at *2-3 (E.D. Mich. Feb. 27, 1997) (applying res judicata to bar defense in subsequent litigation where a settlement in the prior bankruptcy action was reached by the parties and bankruptcy court signed order approving settlement); *see also Southmark Properties*, 742 F.2d at 869-70 (recognizing res judicata effect of bankruptcy orders that finally dispose of some matter). Finally, Defendants' defense in this action and Conmaco's cross-claim against FFC and objection to FFC's proof of claim both involve identical subject matter, an attack on the commercial reasonableness of the foreclosure sale. *See In re Baudoin*, 981 F.2d at 743 (noting that "a claim *or defense* which could have been, but was not, asserted is still the 'same claim' for purposes of res judicata) (emphasis added). Accordingly, the Court concludes that res judicata bars Defendants from asserting commercial unreasonableness as a defense to FFC's claims under the guaranty agreements.

**IV.     Attorneys' Fees and Costs**

Next, the Court turns to Defendants' argument that a fact issue exists regarding whether the attorneys' fees claimed by FFC are reasonable.[2] While acknowledging that the affidavit of FFC's

---

[1] Dkt. #34, Ex. F.

[2] The Court notes that Defendants have not challenged the amount of attorneys' fees FFC incurred in the bankruptcy proceeding. Unlike the fees requested by FFC in this proceeding, the amount of attorneys' fees claimed in calculating the net proceeds of the foreclosure sale has been substantiated by actual fee statements provided by FFC's bankruptcy counsel. *See* Dkt. #22, Ex. 5. Because the fees for the bankruptcy proceeding have not been challenged, and because the

attorney, Blair A. Bruce, constitutes some evidence of reasonableness, Defendants contend that this evidence has been refuted by the affidavit of their attorney, William R. Sudela. As such, Defendants argue that FFC's motion must be denied on this ground. The Court agrees with Defendants that fact issues exist as to the reasonableness of the fees requested by FFC. The only evidence before the Court relating to the reasonableness of FFC's attorneys' fees for this proceeding are the two affidavits from the opposing attorneys, which convey differing opinions. Without more, the Court is unable to decide this issue as a matter of law. Thus, FFC's motion must be DENIED as to this issue.

Finally, FFC requests that the Court award post-judgment costs and attorneys' fees incurred after the date of judgment, subject to review of the Court as to their reasonableness under the standards governing awards of such fees pursuant to the contractual attorneys' fees clauses. This request will also be DENIED at this time.

## Conclusion

For the foregoing reasons, FFC's Motion for Summary Judgment is GRANTED in part and DENIED in part.

It is so ORDERED.

Signed this 31st day of August, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

fees are otherwise substantiated, the Court will not consider them at this time.